NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT D. TENLEY (Cal. Bar No. 298911)
Assistant United States Attorney
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-2829
     Facsimile: (714) 338-3561
     E-mail:    scott.tenley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| IN THE MATTER OF: THE SEARCH OF RESIDENCE LOCATED AT 25792 NELLIE GAIL ROAD, LAGUNA HILLS, CALIFORNIA | No. 8:19-MJ-00437-DFM<br><br>GOVERNMENT'S APPLICATION TO STAY RULE 41 LITIGATION PENDING RELATED PROCEEDINGS IN FEDERAL BANKRUPTCY COURT<br><br>Hearing Date: To Be Determined<br>Hearing Time: To Be Determined |
|---|---|

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Scott D. Tenley, hereby files its ex parte application to stay Rule 41 litigation pending resolution of related proceedings in federal bankruptcy court.

    Movant opposes the government's application and intends to file a written response no later than December 6, 2019.

    This application is based upon the attached memorandum of points and authorities, the Declaration of Scott D. Tenley and attached exhibits, the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: November 26, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

          /s/
_____
SCOTT D. TENLEY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Movant Brendan Flaherty ("Flaherty") is the target of an ongoing federal criminal investigation. During the course of that investigation, the Federal Bureau of Investigation ("FBI") executed a search warrant at Flaherty's residence and seized a black tower computer and other digital devices, and ▬▬▬▬▬▬▬▬▬▬▬. Flaherty's former employer, referred to herein as "Warrior Golf," contends the black tower computer and other digital devices are its property, not Flaherty's, and has issued a subpoena to the United States Attorney's Office ("USAO") seeking a forensic copy of those devices for its use during pending bankruptcy proceedings. Flaherty has moved the bankruptcy court to quash the subpoena, and that motion is not yet fully briefed.

The government anticipates that in ruling on the motion to quash, the bankruptcy court will resolve the disputed ownership issue – *i.e.*, whether the digital devices are the property of Flaherty or Warrior Golf. Because that ownership issue is one this Court may also have to resolve in ruling on Flaherty pending motion for return of property (the "Rule 41 Motion"), this Court should stay the Rule 41 Motion until the bankruptcy court has ruled on Flaherty's motion to quash. Staying the Rule 41 Motion is in the interest of efficiency and economy, as Flaherty and Warrior Golf are both parties to the bankruptcy proceeding and are fully capable of litigating their ownership dispute in that forum. Proceeding on both tracks would be inefficient, and would raise the threat of conflicting or inconsistent rulings. For these reasons and thus explained more fully below, the Rule 41 Motion should be stayed.

## II. STATEMENT OF PERTINENT FACTS

According to Flaherty's motion to quash, "Flaherty is the founder and former chief operating officer (under various titles) of [Warrior Golf]. Flaherty initially founded Warrior Custom Golf, which manufactures and sells custom golf clubs. Subsequently, Flaherty founded [other related entities] which are primarily in the business of owning and managing golf courses." (Tenley Decl. Ex. 1 at ¶ 6) (Flaherty motion to quash).) Warrior Golf has filed for Chapter 11 bankruptcy in the Southern District of Texas. In re Westwind Manor Resort Association, Inc., Case No. 19-50025 (DRJ) (S.D. Tex.). Shortly before Warrior Golf filed for bankruptcy, Flaherty resigned from Warrior Golf. (Id. at ¶ 8.)

The FBI is investigating Flaherty for suspected violations of 18 U.S.C. §§ 152 (concealment of assets, false oaths and claims, bribery), 371 (conspiracy), 1341 (mail fraud) and 1343 (wire fraud), and other related offenses. In connection with that investigation, on June 4, 2019, the FBI executed a search warrant at Flaherty's residence and on his vehicle and seized several digital devices and ▮▮▮▮▮▮▮▮▮▮ The search warrant application is sealed.

On or around October 28, 2019, Warrior Golf issued a subpoena to the USAO requesting the production of four digital devices seized during the search of Flaherty's residence.[1] (Lesnick Decl. Ex. E.) In the subpoena, Warrior Golf asserted that those four digital

---

[1] Those four digital devices are described as: (1) Scan Disk USB 32GB; (2) Black USB with Russel Thiessen label; (3) black tower computer with USB Roboform and USB hard drive WD elements; and (4) ACER ATC computer tower." (Lesnick Decl. Ex. E at ¶ 2 to subpoena attachment.)

2

devices "are property of [Warrior Golf's bankruptcy] Estates pursuant to 11 U.S.C. Section 541." (<u>Id.</u> at ¶ 5 to subpoena attachment.)

On November 19, 2019, Flaherty moved to quash the subpoena in the bankruptcy court. (Tenley Decl. Ex. 1.) In the motion to quash, Flaherty asserted that the seized digital devices "are the personal property of Flaherty and his family." (<u>Id.</u> at ¶ 11.) In connection with the motion to quash, Warrior Golf and Flaherty entered into a stipulation regarding a briefing, hearing, and deposition schedule, which called for Warrior Golf to file an opposition brief thirty days after the filing of the motion (<u>i.e.</u>, December 18, 2019), for Flaherty to file a reply brief fifteen days later (<u>i.e.</u>, January 2, 2020), and for the bankruptcy court to conduct a hearing on January 27, 2020. (Tenley Decl. Ex. 2.)

**III. ARGUMENT**

    **A.    Legal Standard**

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254-55 (1936); <u>see also</u> <u>Air Line Pilots Ass'n v. Miller</u>, 523 U.S. 866, 878 n.6 (1998) (quoting <u>Landis</u>); <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir. 1962) (same). For this reason, a district court has discretion to stay proceedings pending before it. <u>See</u> <u>Gold v. Johns-Manville Sales Corp.</u>, 723 F.2d 1068, 1077 (3d Cir. 1983) (stating that the authority to stay proceedings derives from the power of every court to manage the cases on its docket and ensure a fair and efficient adjudication of the matters at hand); <u>Mediterranean Enter. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1465 (9th Cir. 1983). In exercising such discretion, the

3

court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254–55.

The Supreme Court has stated:

> A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

Nken v. Holder, 556 U.S. 418, 433–34 (2009). In Nken, the Supreme Court articulated four factors a court should consider in deciding whether to grant an application for a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken, 556 U.S. at 434. The first two factors are the most critical. Id.

**B. The Rule 41 Litigation Should Be Stayed**

Here, the equities weigh in favor of granting a stay of the Rule 41 Motion pending the resolution of Flaherty's motion to quash in the bankruptcy court.

First, the government is likely to succeed when the Rule 41 motion is heard on the merits. "The burden of proof on a Rule 41(g) motion depends on when the defendant files the motion. When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property." United States v. Gladding, 775 F.3d 1149, 1152 (9th Cir. 2014) (quoting United

4

States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987)). In this case, Flaherty has not made any showing, or even alleged, that the digital devices and ▮▮▮▮▮▮▮▮▮▮ were illegally seized.[2] Nor could he reasonably do so, as the items were seized pursuant to a duly-authorized federal search warrant.[3] Accordingly, his motion is likely to fail.

While the government will not suffer irreparable injury absent a stay, the stay "will promote economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254–55. In addition to establishing the illegality of the seizure, Flaherty must also establish he is entitled to "lawful possession" of the property seized. Gladding, 775 F.3d at 1152. The government anticipates the Rule 41 Motion will therefore require this Court to determine whether the black tower computer that is featured in Flaherty's motion is Flaherty's property or the property of his former employer, Warrior Golf.[4] (See Mtn. at 4 (identifying facts supporting an ownership interest in only the black tower computer but not any other seized digital devices).) Flaherty and Warrior Golf are litigating that

---

[2] Indeed, in the case on which Flaherty relies most heavily, Ramsden v. United States, 2 F.3d 322 (9th Cir. 1993), the property that was ordered returned was "illegally seized."

[3] Flaherty may argue that he cannot challenge the legality of the search without access to the search warrant application. But a party is not entitled to sealed search warrant materials prior to indictment, see Matter of EyeCare Physicians of Am., 100 F.3d 514, 518 (7th Cir. 1996), and filing a Rule 41 Motion does not create such a right for Flaherty.

[4] While Warrior Golf has not yet asserted that any of the other digital devices are its property, the government is not aware that Warrior Golf has excluded that possibility. Indeed, Flaherty has stated that he used all of the devices for both business and personal purposes. (See Tenley Decl. Ex. 1 at ¶ 11 (motion to quash asserting that "Flaherty and his family used their computers for a variety of purposes, including for personal, business, and entertainment uses").

5

issue, among others, through Flaherty's motion to quash in the bankruptcy case.[5] It is far more efficient to litigate the disputed ownership issue in the bankruptcy case, where both Warrior Golf and Flaherty are represented parties, than in this case, where the government would be required to assert Warrior Golf's position by proxy. Simultaneous litigation of the disputed ownership interest in different forums also creates the danger of conflicting or inconsistent rulings. Relatedly, the bankruptcy court ruling could have preclusive effect on the Rule 41 Motion.

Third, Flaherty will not suffer irreparable injury if a stay is granted. The requested stay is for a limited time – until the bankruptcy court decides Flaherty's motion to quash. The parties in that proceeding have stipulated to an orderly briefing schedule, with a hearing on January 27, 2020. (Tenley Decl. Ex. 2.) Flaherty's likely claims of irreparable injury should be rejected. Flaherty's bankruptcy counsel contends that the digital devices contain "relevant personal information, including without limitation financial records and documents" that may be necessary for pending court matters. (Lesnick Decl. ¶ 7.) However, Flaherty has not identified any specific documents he requires for purposes of his defense, his basis for believing they reside on the seized digital devices, or some indication that these documents are unavailable from other sources (such as financial institutions or cloud back-ups, for example).

---

[5] Counsel to Warrior Golf has advised the government that Warrior Golf's ownership of the digital devices that are the subject of the subpoena will feature prominently in its opposition to Flaherty's motion to quash.

6

Flaherty may also argue that he will be injured if the Court does not immediately rule on the return of ▮▮▮▮▮▮▮▮▮▮ he purportedly needs to fund his defense in this investigation and the bankruptcy proceeding. However, in support of that argument, he has provided only a hearsay declaration from his counsel stating that he "<u>may</u> be required to sell the ▮▮▮▮▮▮▮▮▮▮ in order to fund his litigation and defense." (Uyeda Decl. ¶ 12) (emphasis added). The possibility that Flaherty <u>may</u>, at some unspecified future date, need to sell the ▮▮▮▮▮▮▮▮ does not establish irreparable injury. Moreover, Flaherty has not presented any non-hearsay evidence regarding his ability to pay his legal costs, such as his own declaration, a financial affidavit, or other information regarding his assets and liabilities that would render his counsel's assertion credible.

Finally, the stay is in the public interest. The public has a strong interest in the "fair and efficient prosecution of criminal laws." <u>S.E.C. v. Nicholas</u>, 569 F. Supp. 2d. 1065, 1067, 1072 (C.D. Cal. 2008) (staying civil action, in part, because of the public's "vital interest" in the outcome of a related criminal case). It is plainly <u>in</u>efficient for the government to be dragged into a private dispute regarding the ownership of digital devices when the two feuding parties are already engaged in litigation on that very issue in another forum. On the other hand, it would be more efficient for Warrior Golf to create, in the first instance, a factual record regarding its claim to ownership of the black tower computer and other digital devices. Based on that developed record, the government and the Court can therefore more efficiently respond to and resolve (respectively) Flaherty's Rule 41 Motion. The public

also has an interest in the government's devotion of its attention and resources to the ongoing criminal investigation of Flaherty, rather than ancillary matters that distract from that investigation.

In sum, the balance of the equities weighs in favor of a stay, as it will promote efficiency and economy, and is in the public interest.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court stay the Rule 41 Motion until such time as the bankruptcy court rules on Flaherty's Motion to Quash.

Alternatively, the government requests that the Court enter a briefing and hearing schedule that allows for the government to file its opposition brief on or after December 20, 2019 (or two days after Warrior Golf files its opposition to Flaherty's motion to quash in the bankruptcy proceeding, which is currently set for December 18, 2019, whichever is later).