Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bienertkatzman.com
Steven Jay Katzman, State Bar No. 132755
skatzman@bienertkatzman.com
Anne A. Uyeda, State Bar No. 235206
auyeda@bienertkatzman.com
**BIENERT | KATZMAN PC**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

Attorneys for Brendan Flaherty

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE IN THE MATTER OF: THE SEARCH OF RESIDENCE LOCATED AT 25792 NELLIE GAIL ROAD, LAGUNA HILLS, CALIFORNIA | Case No. 8:19-MJ-00437<br><br>**BRENDAN FLAHERTY'S OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION TO STAY RULE 41 LITIGATION PENDING PROCEEDINGS IN FEDERAL BANKRUPTCY COURT**<br><br>[Filed concurrently with Declaration of Anne A. Uyeda] |

## Table of Contents

I.  INTRODUCTION ............................................................................................... 1

II. THE GOVERNMENT HAS FAILED TO ESTABLISH GROUNDS FOR *EX PARTE* RELIEF. ............................................................................................ 4

III. THE GOVERNMENT HAS FAILED TO DEMONSTRATE THAT A STAY WOULD BE PROPER. ......................................................................... 4

    A.  The government makes no showing, let alone a strong one, that it is likely to succeed on the merits of the Rule 41 Motion and relies on inapplicable and outdated case law. ............................................................. 5

    B.  The government concedes that it will not be irreparably injured absent a stay. ...................................................................................................... 7

    C.  A stay would substantially injure Mr. Flaherty's interests given that he needs the Seized Items, particularly the ▇▇▇▇ that will assist funding his defenses and which are not at issue in the motion to quash. ............................................................................................................. 9

    D.  A stay is not in the public interest. ................................................... 12

IV. CONCLUSION ................................................................................................ 14

**Table of Authorities**

Cases

*Demaree v. Pederson*,
   887 F.3d 870 (9th Cir. 2018) ................................................................................ 6
*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
   498 F.3d 1059 (9th Cir. 2007) .............................................................................. 5
*Hilton v. Braunskill*,
   481 U.S. 770 (1987) .............................................................................................. 5
*In re Advanced Biomedical, Inc.*,
   547 B.R. 337 (Bankr. C.D. Cal. 2016) ................................................................. 8
*In re ConAgra Foods, Inc.*,
   2014 WL 12580052 (C.D. Cal. Dec. 29, 2014) ....................................... 4, 5, 8, 11
*In re Grand Jury Investigation Concerning Solid State Devices, Inc.*,
   130 F.3d 853 (9th Cir. 1997) ................................................................................ 6
*In re Intermagnetics Am., Inc.*,
   101 B.R. 191 (C.D. Cal. 1989) ............................................................................. 4
*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .............................................................................................. 5
*Luis v. United States*,
   136 S. Ct. 1083 (2016) ........................................................................................ 12
*Mission Power Engineering Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ....................................................................... 4
*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................ 4, 5
*Ramsden v. United States*,
   2 F.3d 322 (9th Cir. 1993) ................................................................................ 6, 7
*S.E.C. v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) .............................................................. 12
*United States v. Comprehensive Drug Testing, Inc.*,
   621 F.3d 1162 (9th Cir. 2010) .............................................................................. 6
*United States v. Gladding*,
   775 F.3d 1149 (9th Cir. 2014) ......................................................................... 5, 6
*United States v. Martinson*,
   809 F.2d 1364 (9th Cir. 1987) .............................................................................. 5

Statutes

11 U.S.C. § 542 ........................................................................................................ 8

Rules

Fed. R. Bankr. P. 7001 ................................................................................................8
Fed. R. Crim. P. 41 ...........................................................................................2, 5, 6

## I.  INTRODUCTION

On November 18, 2019, Brendan Flaherty ("Flaherty") filed a motion for an order under Federal Rule of Criminal Procedure 41(g) directing the government to return several computers and other electronic devices (together, the "Computers"), and ▮▮▮▮ ▮▮▮▮ (the ▮▮▮▮ and, together with the Computers, the "Seized Items") that had been seized from Mr. Flaherty's home during a search executed in June 2019 ("Rule 41 Motion"). Separately, on November 19, 2019, Mr. Flaherty's bankruptcy counsel filed a motion to quash a subpoena served on the government by the Debtors in cases currently pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court"), which are being jointly administered as *In re Westwind Manor Resort Association, Inc., et al.* [Case No. 19-50026 (DRJ)] (collectively, the "Bankruptcy Cases").

Through its *ex parte* application ("Application"), the government now seeks to stay the Rule 41 Motion on the grounds that the "bankruptcy court will resolve the disputed ownership issue – i.e., whether the digital devices are the property of Flaherty or Warrior Golf" so staying the Rule 41 Motion "is in the interest of efficiency and economy" and "[p]roceeding on both tracks would be inefficient, and would raise the threat of conflicting or inconsistent rulings." *See* App. at 1. The Application fails for several reasons.

First, the government has failed to demonstrate that it is entitled to *ex parte* relief. It concedes that it will not suffer irreparable injury absent a stay, there is no danger that notice will result in the destruction of evidence or a party's flight, and the request to stay is not a routine procedural order but one that substantially and detrimentally affects Mr. Flaherty's rights.

In addition, the government cannot meet any of the four factors that courts consider when determining whether to issue a stay, particularly the first two factors which the United States Supreme Court has deemed to be the most critical. The government fails to satisfy the first factor, which requires it to make a strong showing that it is likely to succeed on the merits of the Rule 41 Motion. Its argument – that the Rule 41 Motion will fail because Mr.

1  Flaherty has not shown that the Seized Items were illegally seized – is unfounded, relies on
2  outdated and inapplicable case law, and ignores the amendments to Federal Rule of
3  Criminal Procedure 41(g) that permits a person "aggrieved by an unlawful search and
4  seizure of property *or by the deprivation of property*" to move for the property's return.
5  *See* Fed. R. Crim. P. 41(g) (emphasis added).

   The government also fails to satisfy the second critical factor that it demonstrate irreparable injury in the absence of the stay.  Indeed, the government concedes that it will *not* be irreparably injured and tries to distract the Court with red herring arguments regarding the perceived efficiency of having the parties litigate ownership issues in the Bankruptcy Cases first.  The issue before the Bankruptcy Court, however, is whether the subpoena should be quashed because the Computers contain privileged and confidential information.  Questions of ownership may not be decided by the Bankruptcy Court and the Debtors' purported "ownership" of the Computers, for which Mr. Flaherty has seen no evidence, is not the same as ownership of the data on the Computers or the right to obtain copies of the information stored on the Computers.  The undisputed fact remains that the government will not be irreparably injured absent a stay, so the government cannot meet the second factor.

   The third factor also weighs against the government as a stay would substantially injure Mr. Flaherty.  The Computers contain Mr. Flaherty's relevant personal information, including without limitation financial records and documents, that are necessary for him to protect his rights and interests in the Bankruptcy Cases and an action pending in Florida. Mr. Flaherty and his bankruptcy counsel need access to the Computers in order to assert claims and protect his interests in these other proceedings.  Moreover, he needs the ▉ because he has to consider liquidating and selling his assets, including the ▉ in order to fund the litigation of his interests in the Bankruptcy Cases, on-going civil litigation pending in Florida in which he is the defendant, and the government's ongoing criminal investigation.  Significantly, the motion to quash has nothing to do with the ▉ so a stay of the Rule 41 Motion would unduly delay the return of these items to Mr. Flaherty and

detrimentally impact his ability to fund his civil and criminal defenses.

Lastly, the public interest favors the denial of the government's request for a stay. The government's claim that it is inefficient for it to be "dragged into a private dispute regarding the ownership of digital devices when the two feuding parties are already engaged in litigation on that very issue in another forum" ignores the approach set forth in the Rule 41 Motion that extricates the government from the issues implicated by the subpoena and the motion to quash. The approach advocated in the Rule 41 Motion is for the government to return those Seized Items that are not in dispute to Mr. Flaherty and to provide copies of items that are in dispute to Mr. Flaherty. The government is then taken out of the process, the Debtors can properly subpoena Mr. Flaherty, and the civil parties could then follow the normal, orderly rules of discovery and permit Mr. Flaherty to review and turn over responsive, non-privileged information to the Debtors. Having the motion to quash heard first would essentially transform the government into a vehicle by which the Debtors could wholesale obtain Mr. Flaherty's confidential and privileged information, to which they would not be entitled in the first place. This would not serve the public interest, nor protect Mr. Flaherty's rights. It could also put the government directly in the middle of a dispute between Mr. Flaherty and the Debtors regarding the information on the Computers. If the motion to quash is heard first and the Debtors prevail, the government would be put in the unenviable position of having to either produce Mr. Flaherty's privileged and confidential information to the Debtors, or having to sort through the information on the Computers to try to determine what information should be produced to the Debtors and what should not. This would be a nearly impossible task for the government, and the government is not the appropriate party to make determinations about what data constitutes privileged and confidential information of Mr. Flaherty.

For all of these reasons, the Application should be denied, and the Court should schedule a hearing on the Rule 41 Motion as expeditiously as possible.

## II. THE GOVERNMENT HAS FAILED TO ESTABLISH GROUNDS FOR *EX PARTE* RELIEF.

An *ex parte* application must demonstrate "why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). *Ex parte* applications should be "limited to instances in which: (1) there is the threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e., to 'file an overlong brief or to shorten the time within which a motion may be brought')." *In re ConAgra Foods, Inc.*, Case No. CV1105379MMMAGRX, 2014 WL 12580052, at *2 (C.D. Cal. Dec. 29, 2014), citing *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193–94 (C.D. Cal. 1989).

Here, the government has failed to articulate any reason why it is entitled to *ex parte* relief. It concedes that it will not suffer irreparable injury absent a stay. *See* App. at 5 ("While the government will not suffer irreparable injury absent a stay…"). There is no danger that notice will result in the destruction of evidence or a party's flight. Lastly, the government's request – to stay the Rule 41 Motion pending a ruling from the Bankruptcy Court on the motion to quash – is not a routine procedural order but, rather, one that substantially and detrimentally affects Mr. Flaherty's rights. For these reasons, the government has failed to show that it is entitled to *ex parte* relief and the Application should be denied.

## III. THE GOVERNMENT HAS FAILED TO DEMONSTRATE THAT A STAY WOULD BE PROPER.

As noted in the Application, courts consider four factors when deciding whether to issue a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434

(2009), citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are "the most critical." *Nken*, 556 U.S. at 434.

If there is a "fair possibility that the stay … will work damage to someone else," the stay may be inappropriate absent a showing by the moving party of "hardship or inequity." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007), citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see, e.g.*, *In re ConAgra Foods, Inc.*, Case No. CV1105379MMMAGRX, 2014 WL 12580052, at *8-9 (denying an *ex parte* application for a stay of the case pending resolution of an appeal in a separate case and anticipated appeals in other cases where, among other things, the movant's claims that it would be required to expend resources in connection with discovery and defense did "not demonstrate a 'clear case of hardship or inequity' such as would support entry of a stay").

The party requesting a stay bears the burden of showing that the circumstances justify an exercise of judicial discretion to issue a stay. *See Nken*, 556 U.S. at 433–34. As demonstrated below, the government has failed to meet that burden, particularly as it concedes that it will not suffer irreparable harm absent a stay.

**A.   The government makes no showing, let alone a strong one, that it is likely to succeed on the merits of the Rule 41 Motion and relies on inapplicable and outdated case law.**

Relying on *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014), which in turn relied on *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir. 1987), the government argues that it is likely to succeed on the merits because Mr. Flaherty has not shown that the Seized Items were illegally seized. *See* App. at 4-5. The government's position is unfounded.

The Rule itself plainly states that "*[a] person aggrieved by* an unlawful search and seizure of property *or by the deprivation of property may move for the property's return*." Fed. R. Crim. P. 41(g). As the Advisory Committee Notes to the Rule explain, the prior version of Rule 41(g) – then known as Rule 41(e) – "permitted such persons to seek return of their property if they were aggrieved by an unlawful search and seizure," but "the rule

failed to address the harm that may result from the interference with the lawful use of property by persons who are not suspected of wrongdoing." Fed. R. Crim. P. 41(g), Advisory Committee Notes to the 1989 Amendments. The 1989 amendments to the Rule "provide[d] that an aggrieved person may seek return of property that has been unlawfully seized, ***and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.***" *See id.* (emphasis added). The Ninth Circuit has recognized that the language of the 1989 amendments "was designed to expand the rule's coverage to include property lawfully seized." *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc), *overruled in part on other grounds as recognized in Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam); *see also In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 856 (9th Cir. 1997) (noting that a Rule 41(g) motion "should be granted either when the movant is aggrieved by an unlawful seizure or, if the seizure was lawful, when the movant is aggrieved by the government's continued possession of the seized property," citing "the Advisory Committee Notes to the 1989 Amendment of Rule 41(e)").

The *Martinson* case on which *Gladding* relied was issued in 1987, two years prior to the Rule's amendment. Accordingly, it is no longer good law and the government's citations to *Gladding* and *Martison* are inapposite. In any event, the *Gladding* court never discussed or analyzed whether a Rule 41 movant must demonstrate that the property's seizure was illegal, and that case is distinguishable in that the movant had filed his Rule 41(g) motion "after he pleaded guilty and the government no longer needed his property as evidence" and, accordingly, the burden of proof shifted to the government to demonstrate that it had a legitimate reason to retain the property. *See Gladding,* 775 F.3d at 1152-53.

Finally, the government's citation to *Ramsden v. United States*, 2 F.3d 322, 324-25 (9th Cir. 1993) to bolster its flawed analysis fails. *See* App. at 5, fn. 2. Although the case references "illegally seized" documents, the legality of the seizure was not material to four-factor test applied by the Ninth Circuit in determining whether a court should exercise

equitable jurisdiction over a pre-indictment Rule 41(g) motion. Moreover, *Ramsden* recognized that a movant in a Rule 41(g) motion may, under the express language of the Rule, file a motion for the return of property if he or she was "aggrieved by an unlawful search and seizure *or* by the deprivation of property." *See id.* at 324 n.1. As extensively detailed in the Rule 41 Motion, Mr. Flaherty is entitled to the return of the Seized Items because they are his personal property, he will suffer irreparable harm if they are not returned, and the Rule 41 Motion is his only available remedy because no civil forfeiture proceedings have been filed and no criminal action has been filed. *See generally* Rule 41 Motion. For all of the reasons set forth in the Rule 41 Motion, as supported by the declarations and exhibits submitted in support of the same, Mr. Flaherty, not the government, is likely to succeed on the merits.

For all of these reasons, the government has failed to satisfy the first, critical factor that it make a strong showing that it is likely to succeed on the merits of the Rule 41 Motion. The government has failed to make any showing, let alone a strong one. Accordingly, this factor weighs against the issuance of a stay.

**B.     The government concedes that it will not be irreparably injured absent a stay.**

The government concedes that the first two factors of the *Nken* test are the most critical. *See* App. at 4. Moreover, the government concedes that it <u>cannot</u> satisfy the second factor of the test. *See id.* at 5 ("While the government will not suffer irreparable injury absent a stay…"). Thus, it is undisputed that, like the first factor, the government cannot demonstrate that it can meet the second critical factor in favor of a stay.

The government asserts that it would be more efficient to litigate "the disputed ownership issue" in the Bankruptcy Case than in the context of the Rule 41 Motion. *See* App. at 5-6. The issue before the Bankruptcy Court, however, is not who owns the Computers. The issue is whether the subpoena should be quashed because the Computers contain privileged and confidential information. *See* concurrently-filed Declaration of

Anne A. Uyeda ("Uyeda Decl."), Exh. A.[1] While the government claims that the Debtors' counsel will make the ownership of the Computers a prominent part of their opposition to the motion to quash (see App. at 6, fn. 5), that question may not be decided by the Bankruptcy Court on the motion to quash. The question of ownership of the Computers is not determinative of the issue of whether Mr. Flaherty's privileged and confidential information should be produced. In addition, the Debtors have not, to date, filed anything in the Bankruptcy Court that suggests that they own the Computers. If the Debtors wanted the government to turn over the Computers based on ownership, they could have filed a motion or adversary proceeding seeking turnover of property of the bankruptcy estate. *See* 11 U.S.C. § 542; Fed. R. Bankr. P. 7001(1), (2) (an adversary proceeding must be brought to recover property belonging to the bankruptcy estate or to determine the extent of an interest in property); *In re Advanced Biomedical, Inc.*, 547 B.R. 337, 346 (Bankr. C.D. Cal. 2016), *aff'd,* No. AP 14-01275-MW, 2016 WL 7188651 (B.A.P. 9th Cir. Dec. 2, 2016) (noting that the plaintiff's commencement of an adversary proceeding to determine ownership interests in certain accounts receivables and proceeds scheduled by a Chapter 11 debtor was proper under Fed. R. Bankr. P. 7001). But the Debtors did not file a turnover action. Instead, they issued a subpoena – a tool to obtain discoverable information. And the Debtors' purported "ownership" of the Computers, for which Mr. Flaherty has seen no evidence, is not the same as ownership of the data on the Computers or the right to obtain copies of the information stored on the Computers.

The arguments raised by the government regarding perceived efficiencies and the dangers of inconsistent rulings, which are not supported by any legal authority, are all red herrings. *See* App. at 5-6; *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *9 (rejecting the contention that judicial economy heavily favors a stay because the movant "failed to adduce evidence demonstrating that the issues on appeal in *Jones* will directly impact the

---

[1] The copy of the motion to quash filed as Exhibit 1 to Mr. Tenley's declaration appears to be missing every other page. Accordingly, a complete copy of this motion is attached as Exhibit A to the Uyeda Declaration.

court's resolution of plaintiffs' amended motion for class certification or require additional discovery and briefing related to class certification"). The only relevant question is whether the government will suffer irreparable injury absent a stay. It admits that it will not, so the inquiry ends there.

**C.  A stay would substantially injure Mr. Flaherty's interests given that he needs the Seized Items, particularly the ▆▆▆ that will assist funding his defenses and which are not at issue in the motion to quash.**

For the same reasons that are set forth in the Rule 41(g) Motion regarding the irreparable harm Mr. Flaherty will suffer if the Seized Items are not returned to him, Mr. Flaherty will suffer irreparable harm if a stay is issued.

On August 30, 2019, Mr. Flaherty's bankruptcy counsel filed approximately 10 proofs of claim in the Bankruptcy Cases on his behalf (the "Claims"). *See* Declaration of Matthew A. Lesnick filed in support of the Rule 41 Motion ("Lesnick Decl."), at ¶ 5. The Claims were filed on that date because of the impending claims bar deadline in the Bankruptcy Cases. *Id.* If Mr. Flaherty had not timely filed the Claims, his numerous claims against the Debtors might have been disallowed. *Id.* However, the Claims were not nearly as specific, detailed and inclusive as Mr. Flaherty would like. *Id.* They were filed as "placeholder" claims to put the Debtors, creditors and other parties in interest on notice of the general nature and estimated amounts of Mr. Flaherty's claims against the Debtors in the Bankruptcy Cases. *Id.* As suggested in the Claims themselves, Mr. Flaherty intends to amend and/or supplement the Claims once he receives his financial records back from the Government and the Debtors. *Id.* If the Debtors or any other party in interest objects to the Claims, it will be very difficult for Mr. Flaherty to adequately defend his rights without the information contained on the Computers. *Id.*

Also, on or about July 24, 2019, an individual named Cecil Mellinger filed a complaint against Mr. Flaherty in the Twelfth Judicial Circuit Court in and for Manatee County, Florida, captioned *Cecil Mellinger v. Brendan Flaherty* [Case No. 2019-CA-3385] (the "Mellinger Action"). *Id.* at ¶ 6. On October 16, 2019, Mr. Flaherty removed the

Mellinger Action to the United States District Court for the Middle District of Florida, where it is currently pending as Case No. 8:19-cv-02555. *Id.*

In order to assert and defend claims and protect Mr. Flaherty's interests in the Bankruptcy Cases and in the Mellinger Action, Mr. Flaherty and his bankruptcy and civil litigation counsel need access to the Computers because they contain relevant personal information, including without limitation financial records and documents, that are needed in order to adequately prosecute and defend Mr. Flaherty's rights and interests in the Bankruptcy Cases and the Mellinger Action. *Id.* at ¶ 7.

Moreover, given the ongoing litigation in the Bankruptcy Cases and the Mellinger Action, as well as the government's investigation of Mr. Flaherty, he needs the ▇▇▇ as he may be required to sell them in order to fund his litigation and defense in these various matters. *See* Declaration of Anne A. Uyeda filed in support of the Rule 41 Motion, at ¶ 12. Ownership of the ▇▇▇ is not an issue raised by the motion to quash, nor does it appear that the Debtors will be raising it in its opposition. *See* Uyeda Decl., Exh. A; App. at 6, fn. 5. Because ownership of the ▇▇▇ is not implicated by the motion to quash, a stay of the Rule 41 Motion will significantly harm Mr. Flaherty's ability to fund his civil and criminal defenses.

The government argues that Mr. Flaherty will not suffer irreparable injury if a stay is granted because it will be for a limited time as the hearing on the motion to quash is set for January 27, 2020. *See* App. at 6. First, that date is still approximately two months from now, which is a considerably long period of time for Mr. Flaherty to be deprived of: (1) key documents that he needs to assert claims and defend his interests in the ongoing, unstayed bankruptcy court, criminal investigation, and civil litigation in which he is named as a defendant; and (2) the ▇▇▇ he may have to sell in order to fund his litigation and defense in these matters. Second, the hearing date on the motion to quash may be continued to some unknown future date, either on the court's own motion or through additional stipulations by

counsel.[2] Third, it is also unknown when the Bankruptcy Court will actually issue a ruling on the motion to quash – it may take the matter under consideration at the hearing and Mr. Flaherty could be forced to wait additional weeks or months before an order is issued. *See, e.g.*, *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *7 (noting that the fact that briefing in another case was scheduled to be completed within a certain time frame was "not sufficient to conclude that any stay will be of a relatively limited duration" since, *inter alia*, "[b]riefing could be extended on application of the parties" and "[a]fter oral argument, moreover, it is unclear how long it will take for the panel issue a decision"). Accordingly, all of the government's arguments that Mr. Flaherty will not be harmed by the limited duration of the proposed stay fail.

The government also claims that Mr. Flaherty "has not identified any specific documents he requires for purposes of his defense, his basis for believing they reside on the seized digital devices, or some indication that these documents are unavailable from other sources (such as financial institutions or cloud back-ups, for example)." *See* App. at 6. But the government fails to explain why any of this information is needed or relevant, and fails to cite to any authority in support of its argument.

In addition, the government dismisses Mr. Flaherty's claim that he needs the ▇ in order to fund his defenses, arguing that he "has not presented any non-hearsay evidence regarding his ability to pay his legal costs, such as his own declaration, a financial affidavit, or other information regarding his assets and liabilities that would render his counsel's assertion credible." *See* App. at 7. Again, the government cites no authority in support of its arguments that such a detailed declaration is required from Mr. Flaherty, an individual who the government admits is a "target of an ongoing federal criminal investigation." *See* App. at 1.

---

[2] In fact, on December 4, 2019, counsel for the Debtors proposed continuing the opposition and reply deadlines with respect to the motion to quash. Although the hearing date is currently set for January 27, 2020, that date remains subject to change.

The government also asserts, again without citation to any authority, that "the possibility that Flaherty <u>may</u>, at some unspecified future date, need to sell ▮▮▮▮ ▮▮▮▮ does not establish irreparable injury." *See* App. at 7. But Mr. Flaherty cannot know to what extent he needs to start liquidating assets in his retirement accounts, including the ▮▮▮▮ because he does not know how extensive and aggressive the government, the Debtors, and the plaintiff in the Mellinger Action will be in their respective investigation and litigation. These matters are all out of Mr. Flaherty's control. What is clear, though, is that Mr. Flaherty is entitled to the counsel of his choice in the matters and the government's continued retention of the ▮▮▮ violates this Sixth Amendment right. *See, e.g.*, *Luis v. United States*, 136 S. Ct. 1083, 1087-96 (2016) (the government's pretrial restraint of the defendant's assets not traceable to criminal conduct violated the defendant's right under the Sixth Amendment to counsel of her choice).

Because it is clear that Mr. Flaherty will suffer irreparable harm if a stay is issued, this factor weighs in favor of denying the government's request for a stay.

**D.     A stay is not in the public interest.**

The government claims that a stay is in the public interest for various reasons. *See* App. at 7-8. All of these reasons fail. First, the government's citation to *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal. 2008) actually supports Mr. Flaherty's position. In that case, the court stayed a civil case in favor of parallel criminal proceedings because the public interest was "best served by resolving the criminal case in the most expeditious manner possible," the criminal case was "of greater relative importance to the named Defendants," and staying the civil case "is not of an equally pressing nature.' *Id.* at 1072-73. Here, the public interest would also be best served by resolving the criminal proceeding – the Rule 41 Motion that resulted from the government's seizure of items from Mr. Flaherty's home in connection with the government's ongoing criminal investigation – in the most expeditious manner possible. The criminal investigation is obviously of greater relative importance to Mr. Flaherty. It cannot be disputed that the Bankruptcy Cases are not of an equally pressing nature. Thus, for the reasons articulated in *Nicholas*, the public

interest is served by permitting the criminal proceedings involving Mr. Flaherty to continue unimpeded.

Second, the government claims that it is "plainly inefficient for [it] to be dragged into a private dispute regarding the ownership of digital devices when the two feuding parties are already engaged in litigation on that very issue in another forum," it is "more efficient for Warrior Golf to create…a factual record regarding its claim to ownership of the black tower computer and other digital devices," and the government and the Court could "more efficiently respond and resolve" the Rule 41 Motion. App. at 7. But the Rule 41 Motion should be heard first for the precise reason that it will extricate the government from the private parties' dispute. By serving the subpoena, the Debtors are forcing the government into the middle of the dispute over the Computers and attempting to obtain devices seized from Mr. Flaherty's home that contain confidential and privileged information.

If the Seized Items not in dispute are returned to Mr. Flaherty and copies of those items that are in dispute are provided to Mr. Flaherty, the government is taken out of the process. The Debtors can properly subpoena Mr. Flaherty and the civil parties could then follow the regular rules of discovery, meet and confer regarding the scope of discovery requests and issues of privilege and production, and Mr. Flaherty would turn over responsive, non-privileged information to the Debtors. Having the motion to quash heard first makes no sense since through the subpoena, the government would be become a vehicle by which the Debtors could wholesale obtain Mr. Flaherty's confidential and privileged information, to which they would not be entitled in the first place. Through the approach advocated in the Rule 41 Motion, the government would not have to become involved in the civil dispute at all. Regardless, though, the government should not be permitted to evade its obligations to respond to the Rule 41 Motion by arguing that other parties would be "more efficient" at establishing the facts the government needs for its opposition.

Lastly, the government takes the position that the public has "an interest in the government's devotion of its attention and resources to the ongoing criminal investigation of Flaherty, rather than ancillary matters that distract from that investigation." *See* App. at

7-8. But the Rule 41 Motion is not an "ancillary matter" but rather directly relates to the ongoing criminal investigation. The motion focuses entirely on the impropriety of the government's continued retention of the Seized Items. In response, the government must respond and a take a position as to whether the Seized Items do or do not constitute or contain evidence of purported misconduct or criminal activity. Thus, the issues raised by the Rule 41 Motion go to the very heart of the government's ongoing investigation.

Because none of the government's arguments demonstrate that the public interest would be served by the issuance of a stay, this factor weighs against the granting of the Application.

## IV.  CONCLUSION

For the reasons set forth above, the government has failed to meet its burden of establishing any of the four factors (particularly the critical first two factors) favoring a stay of the Rule 41 Motion pending the Bankruptcy Court's decision on the motion to quash. Accordingly, Mr. Flaherty requests that the Court issue an order denying the Application and setting a hearing on the Rule 41 Motion for a date that is as soon as practicable and convenient to the Court's schedule.

Dated:  December 6, 2019

BIENERT | KATZMAN PC

By: *Anne A. Uyeda*
Thomas H. Bienert, Jr.
Steven Jay Katzman
Anne A. Uyeda
Attorneys for Brendan Flaherty