1

**DECLARATION OF SCOTT D. TENLEY**

2    I, Scott D. Tenley, declare as follows:

3    1.    I am an Assistant United States Attorney in the United

4  States Attorney's Office for the Central District of California.   I

5  am an attorney assigned to the investigation related to the search

6  warrant in this matter.

7    2.    I submit this declaration to provide to the Court further

8  information relevant to the motion for return of property filed in

9  this matter, and in response to the Court's April 27, 2020 Order (CR

10  27).

11    3.    All seized digital devices have been returned, or are in

12  the process of being returned, as follows:

13    a.    On May 8, 2020, I notified counsel to Movant Brendan

14  Flaherty, Anne Uyeda, that the following digital devices were

15  available for return: Apple computer Mac All in One; Hitachi hard

16  drive 500 GB; Dell Inspiron Computer Tower; Apple Hard Drive; and HP

17  Pavilion 1340n computer tower.   Those devices are collectively

18  referred to in the government's opposition brief as the "Group Two

19  Devices."

20    b.    On May 8, 2020, I notified counsel to Warrior Golf's

21  bankruptcy estate (referred to as "debtors" in the government's

22  opposition), Michael Warner, that the following digital devices were

23  available for return: black tower computer with USB RoboForm and USB

24  hard drive WD elements; ACER ATC computer tower; Scan Disk 32 GB USB;

25  and black USB drive with label stating "Russel Theissen."[1]   Those

26

27    [1] Pursuant to a stipulation entered in the bankruptcy matter,
these devices "are property, as of the date of the Stipulation Order,

28  of the Debtors' Estates pursuant to Section 541 of the Bankruptcy

devices are collectively referred to in the government's opposition as the "Group One Devices."

     c.   Counsel were instructed to make arrangements with Special Agent Craig Mason of the Federal Bureau of Investigation ("FBI") to retrieve the digital devices.

     d.   On May 11, 2020, Special Agent Mason informed me that both parties had contacted him to make arrangements for the return of the respective digital devices.  Special Agent Mason further informed me that he delivered the Group Two Devices to Ms. Uyeda's office on May 11, 2020.

   4.   In addition to making the Group One Devices available for return to Mr. Warner, I also provided to Mr. Warner a copy of the Court's April 27, 2020 Order.[2]

     a.   In response, Mr. Warner provided me the declaration and exhibits attached hereto as Exhibit A.  The declaration is from Jeremy Rosenthal, Chief Restructuring Officer of Warrior Golf.

     b.   In the declaration, Mr. Rosenthal asserts that the gold coins seized during the search in this matter are an asset of the bankruptcy estate in In re Westwind Manor Resort Association, Inc., Case No. 19-50025 (DRJ) (S.D. Tex.).  To the extent the Court grants Flaherty's motion as to the gold coins (the only property at issue in the motion that has not yet been returned), Mr. Rosenthal requests that the gold coins be transferred to the jurisdiction of the bankruptcy court for further adjudication.

---

Code."  (See Ex. F to Tenley Declaration submitted in connection with the government's opposition brief.)

   [2] The government views Mr. Warner's client, Warrior Golf/debtors, as a victim of certain offenses under investigation. See 18 U.S.C. § 3771(a)(2), (5).

5.   Attached hereto as Exhibit B, and submitted under seal for in camera review, is an update apprising the Court of the status of its investigation as requested in the April 27, 2020 Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Orange County, California, on May 11, 2020.

_____
SCOTT D. TENLEY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH WARRANT EXECUTED IN CASE NO. 8:19-MJ-00437 | Case No. 8:19-MJ-00437<br><br>DECLARATION OF JEREMY ROSENTHAL |

To the Honorable Josephine L. Stanton, United States District Judge:

## **INTRODUCTION**

1.     I, Jeremy Rosenthal, hereby make this Declaration (this "**Declaration**"), based upon my own personal knowledge and information, and to the extent it is based upon my belief, I so state.  I would and could competently testify to the following.  Further, my statements are made based upon my review, and that of counsel for the Debtors (as defined below), of the Debtors' books and records, which are kept in the ordinary course of the Debtors' businesses.

2.     I am an attorney at law, in good standing, duly licensed by the State of California, and am over the age of 18.

3.     I am a partner with Force Ten Partners, LLC, and affiliates (collectively, "**Force 10**").  On February 19, 2019, Warrior Custom Golf, Inc. and certain affiliates retained Force 10 to provide executive management and financial advisory services related to an anticipated Chapter 11 reorganization for the Debtors.

4.     I have authorized the Government (as defined below) to append this Declaration to its filings before this Honorable Court.

## RELEVANT BANKRUPTCY FACTS

5.       On March 3, 2019, Brendan M. Flaherty ("**Mr. Flaherty**") resigned as an Officer and Director of each of the Debtors and appointed the Debtors' Independent Board (as defined below).  Then on March 3, 2019, the Debtors' Independent Board appointed me as the Chief Executive Officer and Chief Restructuring Officer (referred to as the "**CRO**") of Warrior Custom Golf, Inc.  In addition, on the same date I was appointed as the CRO of 10 affiliated entities, identified on **Exhibit 1**, hereto.[1]  Collectively, Warrior Custom Golf, Inc. and the affiliated entities listed on **Exhibit 1**, are referred to as the "**Debtors**".

6.       The Debtors' business address and corporate headquarters is, and at all relevant times, was located at 15 Mason, Irvine, CA (the "**Debtors' Office**").

7.       On or about March 3, 2019, a new and completely independent Board of Directors and Board of Managers, as applicable, consisting of 3 individuals, having no history, relationship, or affiliation with the Debtors, its equity holders or its management, were duly appointed for each parent level Debtor (the "**Debtors' Independent Boards**").  The members of the Debtors' Independent Boards are The Honorable Russell F. Nelms, United States Bankruptcy Judge (Ret.), as Chairman, Kevin Lantry and David Gordon.

8.       As part of the resolutions appointing me CRO which were approved on March 3, 2019, the Debtors' Independent Boards confirmed my authority and duties to completely and solely control all of the Debtors' operations subject to the oversight of the Debtors' Independent Boards.  In addition, the Debtors' Independent Boards authorized my filing of Petitions, under

---

[1] Although not relevant to this Declaration, the Petitions (as defined herein) were filed for 10 Debtor entities, and subsequent to the Petition Date (as defined herein), an additional 6 Debtor entities filed Petitions, under my direction and authorization; thus, as of the Date of this Declaration there are a total of 16 Debtor entities, as listed on **Exhibit 1**.  See, Paragraph 9, *supra*.

Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court, for the Southern District of Texas (the "**Bankruptcy Court**").

9.      On March 4, 2019 (the "**Petition Date**"), the Debtors each filed Petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court (collectively, the "**Petitions**" and the "**Bankruptcy Cases**").  A second group of 5 Debtors filed Petitions on April 4, 2019, and the last of the 16 Debtors filed its Petition on May 30, 2019.  See, Footnote 1.

10.      On March 27, 2019, the Bankruptcy Court entered its Order confirming my employment as CRO.  Bankruptcy Docket No. 127.[2]

11.      On April 28, 2019, the Bankruptcy Court entered its Order confirming the appointment of the Debtors' Independent Boards.  Bankruptcy Docket No. 128.

## RELEVANT BANKRUPTCY CODE PROVISION

12.      Upon the filing of the Petitions, a *Bankruptcy Estate* is created, consisting of all assets of the Debtors, including legal and equitable interests (referred to as "**Property of the Estate**"), wherever located.  Bankruptcy Code Section 541(a).  *Matter of Criswell*, 102 F.3d 1411, 1416 (5th Cir.1997), *In re Maranatha Mining Company*, Inc, 1993 WL 366657(9th Cir. 1993); *In re Jones*, 657 F.3d 921, 924 (9th Cir. 2011).

13.      The Bankruptcy Court has the sole jurisdiction over Property of the Estate.  *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) (Rehnquist, C.J.) ("Bankruptcy Courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate."); *see also Cent. Va. Comm. Col. V. Katz*, 546 U.S. 356, 372, 378 (2006) (Stevens, J.)

---

[2] I would be pleased, upon the Court's request, to provide copies of the documents referenced herein, that appear on the Bankruptcy Court's Docket.

14.     The property of the estate is comprised of the property described in Bankruptcy Code § 541 wherever located and by whomever held. *In re Bentley*, 120 B.R. 712, 715. (Bankr. S.D.N.Y. 1990).  A person in possession of property of the estate must deliver to the trustee any property of the debtor. 11 U.S.C. § 542 (a); *see also In re Hymond*, No. 08–41356–RFN–13, 2012 WL 6692196, at *4 (Bankr. N.D. Tex. Dec. 21, 2012).

## THE "GOLD & SILVER" AT THE DEBTORS' OFFICE

15.     On the Petition Date the Gold & Silver (as defined below)[3], was located inside an approximately 4-foot tall safe (the "**Safe**").  On the Petition Date the Safe was located in the administrative office area on the second floor of the Debtors' Office.  The Safe and the contents thereof are Property of the Estate.

16.     On March 5, 2019, Mr. Flaherty was an employee of the Debtors.  On such date Mr. Flaherty held no officer or director title with the Debtors (having resigned on March 3, 2019) and was employed in the nature of a consultant to the Debtors and to me, as CRO.  I terminated Mr. Flaherty's employment on June 6, 2019.

17.     On March 5, 2019, Mr. Aaron Mun ("**Mr. Mun**") was an employee of the Debtors and held no officer title with the Debtors but acted as its controller.  Mr. Mun resigned from the Debtors' employment effective on or about May 3, 2019.

18.     On March 5, 2019, Mr. Flaherty and others (including Mr. Flaherty's sons), met Mr. Mun at the Debtors' Office, sometime after 8 p.m. Pacific Time (following the departure of a

---

[3] The "Gold & Silver" as defined below, in paragraph 24 hereof, is upon my information and belief, a subset or portion of a larger quantity of gold and silver coins, that were in the Safe (as defined below) as of the Petition Date.  My use of the defined term "Gold & Silver" herein, is not intended to limit the Causes of Action (as defined below) related to just the Gold & Silver seized by the Government (as defined below), but all of the Debtors' gold and silver coins wherever they might be located and by whomever held.

consultant employed by Force 10), opened the Safe, and removed therefrom the Gold & Silver (the "**Removal of the Gold & Silver**"), and removed from the Debtors' Office certain computer devices.

19.     As the Chief Executive Officer and CRO, I did not authorize Mr. Flaherty, Mr. Mun, or any other person to be in the Debtors' Office after business hours, nor, to remove therefrom the Gold & Silver, or the computer equipment.  From the Petition Date to the present, I am the only person that could authorize the Removal of the Gold & Silver, or the computer equipment, from the Debtors' Office by anyone.

20.     I am knowledgeable of the Removal of the Gold & Silver, after the event, based upon my personal interview of Mr. Mun on May 23, 2019 (the "**Mun Interview**").   As part of my duties as CRO, I interviewed Mr. Mun regarding a number of issues regarding the Debtors' business operations and Property of the Debtors' Estates.  During the Mun Interview Mr. Mun told me of the events of the evening of March 5, 2019, including the Removal of the Gold & Silver. Mr. Mun informed me that he assisted Mr. Flaherty and the others by disabling the Debtors' security cameras and helped Mr. Flaherty remove the Gold & Silver and the computer equipment. Mr. Mun stated that the Removal of the Gold & Silver (and the computer equipment) was done at night, in a *stealth-like* manner, and after disabling the security cameras so that he and Mr. Flaherty would not be discovered by me, employees of the Debtors or recorded on the Debtors' surveillance equipment.   Mr. Mun told me that the Gold & Silver was originally delivered to the Debtors' Office and then stored in the Safe in five (5) shoebox size boxes. Mr. Mun told me that he assisted Mr. Flaherty in putting the gold and silver in Mr. Flaherty's vehicle.   Based on Mr. Mun's statement to me that there were five (5) boxes of coins that were too heavy for him to carry by

himself, I believe that the Gold & Silver, represents only a portion of the gold and silver coins that were in the Safe on the Petition Date.  See, Footnote 3, *infra*.

21.     On January 20, 2020, at my direction and instruction, and with details and facts that I provided, counsel for the Debtors took the deposition of Mr. Mun, pursuant to Federal Rule of Bankruptcy Procedures 2004, in connection with a proceeding in the Bankruptcy Cases (the "**Mun Deposition**").   In the Mun Deposition, Mr. Mun was asked about the events of the evening of March 5, 2019, and in particular the Removal of the Gold & Silver.  Mr. Mun asserted his rights under the Fifth Amendment of the United States Constitution, as the basis for his refusal to  respond to such questions.  As relevant to this Declaration, Mr. Mun had the opportunity to address the Removal of the Gold & Silver during the Mun Deposition, but chose not to do so.  Attached hereto, incorporated herein by this reference and marked as **Exhibit 2**, are excerpts of the Mun Deposition, with respect to, *inter alia*, the Removal of the Gold & Silver.[4]

22.     In connection with my duties as CRO I was advised on May 2, 2019, by the Debtors' information technology personnel that surveillance video existed on the Debtors' security system showing certain events that occurred on March 5, 2019.  I then viewed the March 5, 2019, video showing Mr. Mun escorting the last Force 10 personnel from the Debtors' Office, placing a telephone call and then disconnecting the power supply to the Debtors' surveillance system (the final portion of which was recorded by a camera in the room with the power supply).  By disconnecting the power to the recording device, the video images taken by the many cameras throughout the Debtors' Office were no longer recording.  As a result, after approximately 8:55 p.m. on March 5, 2019, the surveillance systems no longer recorded people entering or exiting the

---

[4] By addressing Mr. Mun's invocation of his Fifth Amendment Right, I do not ask that the Court infer anything with respect to Mr. Mun; rather the details herein are to demonstrate to the Court that Mr. Mun had the opportunity to refute my information and belief regarding the Removal of the Gold & Silver and refused to do so.

Debtors' Office or the movement of people or assets in or out of the Debtors' Office. Disconnecting the power supply prevented the recording of the Removal of the Gold & Silver by Mr. Flaherty, Mr. Flaherty's two sons, and Mr. Mun.  Mr. Mun told me that he intentionally disconnected the power supply to the surveillance system immediately prior to the Removal of the Gold & Silver.  Mr. Mun confirmed to me that he intentionally disconnected the power supply to the surveillance system so that there would be no evidence of the Removal of the Gold & Silver or the computer devices from the Debtors' Office.

23.     Based upon the foregoing facts, I believe that the Gold & Silver is Property of the Debtors' Estates, and not property of Mr. Flaherty.  See, *inter alia*, Section 541 of the Bankruptcy Code.

## THE SEIZURE OF THE GOLD & SILVER

24.     On June 4, 2019, the United States Government (the "**Government**"), executed on a Search Warrant at Mr. Flaherty's home.  In connection with such efforts the Government seized, *inter alia*, a quantity of gold and silver coins (the "**Gold & Silver**").

25.     Thereafter, I became aware of the Government's seizure of the Gold & Silver and in light of the Government's possession did not direct the Debtors' counsel to take any steps to seek to take possession of the Gold & Silver so as not to interfere with the Government's investigation and potential prosecution of Mr. Flaherty.

26.     It is my current understanding that this Honorable Court is considering Mr. Flaherty's Motion for the Return of Seized Property (the "**Flaherty Motion**"); and as relevant to this Declaration, the Gold & Silver.[5]

---

[5] I have instructed counsel for the Debtors to file a Motion for Criminal Referral in the Bankruptcy Court, in connection with, *inter alia*, the facts, I have provided herein.

## <u>THE DEBTORS' EXPECTED LITIGATION AGAINST MR. FLAHERTY, ET AL.</u>

27.     In the Bankruptcy Case, I have filed a Disclosure Statement (the "**Disclosure Statement**") [Bankruptcy Court Docket No. 786], which has been approved by a Bankruptcy Court Order [Bankruptcy Court Docket No. 783] for dissemination to interested parties in the Bankruptcy Cases.  The Disclosure Statement supports a Plan of Reorganization (the "**Plan**"), filed jointly by the Debtors and the Official Creditors Committee in the Bankruptcy Case.  [Bankruptcy Court Docket No. 778]  Confirmation (the approval process) of the Plan is scheduled for hearing on June 15, 2020.

28.     As relevant to this Declaration, the Disclosure Statement contains significant details of Causes of Action[6] held by the Debtors that are preserved to be pursued against Mr. Flaherty and other potential defendants.  The Disclosure Statement has multiple references to the preservation of Causes of Action to be pursued by the creditors' trust after confirmation of the Plan.  Section 3.09 of the Disclosure Statement focuses on the Causes of Action against, *inter alia*, Mr. Flaherty and his affiliates.  I have copied this summary of the Causes of Action against, *inter alia*, Mr. Flaherty and his affiliates:

---

[6] Pursuant to Paragraph 1.01(53) of the Plan, the defined term "Causes of Action" *means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the First Petition Date or during the course of these Chapter 11 Cases, including through the Effective Date. Causes of Action include, but are not limited to, Avoidance Actions, claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, bad faith, willful misconduct, Securities Violations, Commercial Tort Claims, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under Section 549 of the Bankruptcy Code, turnover under Sections 542 and/or 543 of the Bankruptcy Code, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement, counterclaims, claims to determine extent and validity of liens under Section 506 of the Bankruptcy Code, breach of contract, breach of the implied covenant of good faith and fair dealing, common law and statutory conspiracy, civil remedies against racketeer influenced and corrupt organizations under Chapter 96 of Title 18 of the United States Code, overpayment, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, civil conspiracy, whether under feral law or the laws of any state, equitable subordination, including under Bankruptcy Code Section 510(c), aiding and abetting any act or omission of any Person or Entity, objections to fees, and interest or other charges paid by the Debtors.*

**3.09     Misappropriations and Inappropriate Uses of the Raised Funds**

Of the $101 Million raised from LLC Investors for the LLCs, only approximately $35 Million was spent on the acquisition of golf courses and property.  The Debtors have identified numerous highly questionable transactions and distributions by Warrior entities that warrant further review, and if appropriate, pursuit in litigation by the Creditor Trust.  Some of the larger transactions including:

➢ Potentially illegal sale commissions to employees equal to 10% of the funds raised (disguised as wages) from the sale of LLC interests.

➢ Self-described Management Fees of approximately $25.5 Million paid out of the LLCs and/or Acquisitions to other entities controlled by Mr. Flaherty or to pay non-business expenses on Mr. Flaherty's behalf.   This diversion of funds in amount almost equal to the total purchase price of the Golf Courses was comprised of:

  o Approximately $13.3 Million paid by to or on behalf of non-Debtor entities owned/controlled by Mr. Flaherty, including Wholesale Golf Supply & Services, Inc.

  o Approximately $9.4 Million paid to Custom Golf

  o Approximately $2.78 Million paid to American Express, Bank of America and others for apparently personal expenses that appear to have been for the personal benefit of Mr. Flaherty and his family members

29.     Section 5 of the Disclosure Statement, entitled "Preserved Claims" is also focused on Mr. Flaherty, and persons and entities affiliated with Mr. Flaherty, and others.  I have copied the summary of the Causes of Action preserved by the Plan against Mr. Flaherty and others, as provided in Section 5 of the Disclosure Statement, below:

➢ Pre-Petition Insiders, Officers, Directors, affiliates and other individuals in control of the Debtors prior to the Petition Date related to any transfers, breaches of fiduciary duties and any other misconduct

➢ Non-Debtor entities that participated in or facilitated any misconduct

➢ Professionals that provided services to the Debtors Pre-Petition

➢ Persons and Entities that received distributions from the Debtors in connection with Investments, including of cash and/or property

➢ Persons and Entities that engaged in theft or fraud with respect to the Debtors or their assets

➢ Persons and Entities that received transfers that are potentially avoidable as preferential transfers or fraudulent transfers under the Bankruptcy Code or State Laws

➢ Persons and Entities that provided advice, guidance and assistance in connection with the Debtors business operations, including the Failed 2017 Restructuring

➢ Persons and Entities that misappropriated property of the Debtors, including using Warrior's customer contact list, the Debtors' employees, and the Debtors' business relationships

➢ Persons and Entities that received transfers from the Debtors in connection with the sale or marketing of instruments to LLC Investors and/or Convertible Noteholders

59217/0001-20401854v2
May 11, 2020

> ➢ Persons and Entities that received distributions from the Debtors in connection with alleged management services provided to the Debtors and/or on account of their ownership or control over the Debtors

> ➢ Persons and Entities that received distributions from the Debtors in connection with the acquisition and subsequent transfer of properties

30. Exhibit A to the Plan identifies Mr. Flaherty, and persons and entities affiliated with Mr. Flaherty that are the subject of the Causes of Action that are preserved to be pursued after the Effective Date of the Plan. Attached hereto, incorporated herein by this reference, and marked as **<u>Exhibit 3</u>**, is a true and correct copy of Exhibit A to the Plan. I have, for the Court's convenience, highlighted Mr. Flaherty, and various persons and entities affiliated with Mr. Flaherty that are listed on Exhibit A to the Disclosure Statement.

31. Under the Plan, preserved causes of action will be assigned to the creditor trust and pursued by me as the Creditor Trustee.[7] As Creditor Trustee, I intend to pursue the Removal of the Gold & Silver from the Debtors' Office against, Mr. Flaherty and others, and seek damages, including restoring the Gold & Silver to the Debtors, as Property of the Estate.[8] I also intend to pursue other claims and Causes of Action against Mr. Flaherty and affiliated persons and entities. As noted in the Disclosure Statement there were a massive quantity of transactions and actions directed by Mr. Flaherty, that will form the basis of some of the Causes of Action.[9]

---

[7] Pursuant to Paragraph 1.01(53) of the Plan, the defined term "Creditor Trustee" is Force 10 Agency Services, LLC, an affiliate of Force 10; I work through by both entities and I anticipate being the person leading the entity as the Creditor Trustee.

[8] As noted in Footnotes 3 and 7, I intend to pursue more than just the return of the Gold & Silver actually seized by Government.

[9] Due to equitable, judicial, and statutory considerations, the Causes of Action to be pursued against Mr. Flaherty, and others, including those relating to the Removal of the Gold & Silver, are likely to be pursued concurrently and not in a *piece meal* fashion, by the Creditor Trustee following the Effective Date of the Plan. See, Footnote 7.

## THE CRO'S REQUEST

32.     Based upon the foregoing, I respectfully request that this Honorable Court, if it is inclined to grant the Flaherty Motion, and return possession and control of the Gold & Silver to Mr. Flaherty, instead enter an Order providing that the Gold & Silver be transferred by the Government to the Jurisdiction of the Bankruptcy Court, pending whatever subsequent Orders the Bankruptcy Court may enter with respect to the ownership thereof.[10]

I declare, this 11th day of May, 2020, under penalty of perjury pursuant to the laws of the United States, that the foregoing is true and correct.

_____
Jeremy Rosenthal

---

[10] It is my belief that the Gold & Silver, including its ownership by the Debtors, will be addressed by the Bankruptcy Court, in connection with, *inter alia*, the pursuit of preserved Causes of Action against, *inter alia*, Mr. Flaherty, as detailed in the Disclosure Statement, and in the litigation that I, as Creditor Trustee, will bring against Mr. Flaherty and others.   The timing of the litigation will be subject to events in the Bankruptcy Cases, and the Plan.

# **EXHIBIT 1**

The Debtors which are jointly administered under United States Bankruptcy Court for the Southern District of Texas Case No. 19-50026(DRJ) and styled as *In re Westwind Manor Resort Association, Inc., et al.* are:

1. Westwind Manor Resort Association, Inc.;

2. Warrior ATV Golf, LLC;

3. Warrior Acquisitions, LLC;

4. Warrior Golf Development, LLC;

5. Warrior Golf Management, LLC;

6. Warrior Golf Assets, LLC;

7. Warrior Golf Venture, LLC;

8. Warrior Premium Properties, LLC;

9. Warrior Golf, LLC;

10. Warrior Custom Golf, Inc.;

11. Warrior Golf Equities, LLC;

12. Warrior Golf Capital, LLC;

13. Warrior Golf Resources, LLC;

14. Warrior Golf Legends, LLC;

15. Warrior Golf Holdings, LLC; and

16. Warrior Capital Management, LLC.

# EXHIBIT 2

**DEPOSITION OF AARON MUN**
**January 20, 2020**

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

IN RE:                              ) CASE NO. 19-50026
                                    )
WESTWIND MANOR RESORT               ) (Pages 1 - 93)
ASSOCIATION, INC., et al.,          )
                                    )
        Debtor.                     )
_____)



        DEPOSITION OF:  AARON MUN
        DATE AND TIME:  MONDAY, JANUARY 20, 2020
                        START TIME:  9:34 A.M.
                        END TIME:  11:38 A.M.
        PLACE:          686 ANTON BOULEVARD
                        COSTA MESA, CALIFORNIA  92626

        REPORTER:       VERONICA KUBAT
                        CSR NUMBER 6360

# DEPOSITION OF AARON MUN
## January 20, 2020

**2**

```
 1            VIDEOTAPED DEPOSITION OF AARON MUN, TAKEN
 2   ON BEHALF OF THE DEBTOR, ON MONDAY, JANUARY 20, 2020,
 3   AT 9:34 A.M., AT 686 ANTON BOULEVARD, COSTA MESA,
 4   CALIFORNIA, BY VERONICA KUBAT, CSR NO. 6360.
 5
 6                 A P P E A R A N C E S
 7      FOR THE DEBTOR:
 8                 COLE SCHOTZ PC
                   BY:  JAMES WALKER
 9                     ATTORNEY AT LAW
                   901 Main Street, Suite 4120
10                 Dallas, Texas  75202
                   (469) 557-9390
11                 jwalker@coleschotz.com
12      FOR THE INTERESTED PARTY BRENDAN FLAHERTY:
13                 LESNICK PRINCE PAPPAS LLP
                   BY:  MATTHEW A. LESNICK
14                     ATTORNEY AT LAW
                   315 West Ninth Street, Suite 705
15                 Los Angeles, California  90015
                   (310) 396-0964
16                 matt@lesnickprince.com
17      FOR THE WITNESS AARON MUN:
18                 ANGLIN FLEWELLING RASMUSSEN
                   CAMPBELL & TRYTTEN LLP
19                 BY:  DEAN G. RALLIS JR.
                       ATTORNEY AT LAW
20                 301 North Lake Avenue, Suite 1100
                   Pasadena, California  91101
21                 (626) 204-0261
                   drallis@afrct.com
22
        ALSO PRESENT:
23
                   MANNI SIDHU - VIDEOGRAPHER
24                 PHILIP OKITA
25
```

**DEPOSITION OF AARON MUN**
**January 20, 2020**

75

1   Custom Golf QuickBooks accounting information on
2   either the SanDisk USB 32GB or the black USB with the
3   Russell Theissen label?
4           MR. RALLIS:  Same objection.
5           THE WITNESS:  I plead the Fifth.
6   BY MR. WALKER:
7       Q.    Once you had downloaded the Warrior Custom
8   Golf QuickBooks accounting information, did you give
9   the device that that information was saved upon to
10  Mr. Flaherty?
11          MR. RALLIS:  Same objection.
12          THE WITNESS:  I plead the Fifth.
13  BY MR. WALKER:
14      Q.    What did you do with the QuickBooks
15  accounting information after you copied it?
16          MR. RALLIS:  Same objection.
17          THE WITNESS:  I plead the Fifth.
18  BY MR. WALKER:
19      Q.    Did you delete it from the computer system
20  that warrior maintained at that time?
21          MR. RALLIS:  Same objection.
22          THE WITNESS:  I plead the Fifth.
23  BY MR. WALKER:
24      Q.    Let's talk about the five shoeboxes of gold
25  and possibly some silver coins.  Did you observe

**DEPOSITION OF AARON MUN**
**January 20, 2020**

76

1    **Mr. Flaherty or any of his sons remove boxes of gold**
2    **and possibly silver coins from the Warrior Custom**
3    **Golf office on that same evening of March 5, 2019?**
4              MR. LESNICK:  Objection.
5              MR. RALLIS:  Objection.  Lacks foundation.
6              MR. LESNICK:  Lacks foundation.  Also the
7    questioning goes beyond the scope of this contested
8    matter related to the Motion to Quash.
9              THE WITNESS:  I plead the Fifth.
10   BY MR. WALKER:
11        **Q.    Do you know where the coins came from?**
12             MR. RALLIS:  Same objections.
13             MR. LESNICK:  Same objection.
14             THE WITNESS:  I plead the Fifth.
15             MR. LESNICK:  Counsel, if you're going to
16   continue on this, I'm going to have to ask you to
17   explain how it relates to the Motion to Quash.
18             MR. WALKER:  It goes to items that he
19   observed being removed from the office.
20             MR. LESNICK:  What does that have to do
21   with the Motion to Quash?
22             MR. WALKER:  I think it's within the ambit
23   of relevance.
24             MR. LESNICK:  How so?
25             MR. WALKER:  Well, if he saw him removing

**DEPOSITION OF AARON MUN**
**January 20, 2020**

77

1   gold coins, he likely saw him remove the computer

2   equipment.

3           MR. LESNICK:  I'll lodge my objection that

4   all of this line of questioning is beyond the scope

5   of this contested matter.  But go ahead.

6           MR. RALLIS:  I tend to agree that it is

7   beyond the scope.  But ask your questions and I'll

8   pose my objections as we go along.

9           MR. WALKER:  I mean, I'm close to being

10   done with them, so.

11          MR. RALLIS:  Okay.  Thanks.

12   BY MR. WALKER:

13      **Q.   Do you know whether or not the gold coins**

14   **had been stored in a safe prior to Mr. Flaherty's**

15   **removal of them from the Warrior Custom Golf office?**

16          MR. LESNICK:  Same objection.

17          MR. RALLIS:  Objection.  Lacks foundation.

18          THE WITNESS:  I plead the Fifth.

19   BY MR. WALKER:

20      **Q.   Did you know that the coins were stored in**

21   **the office prior to March 5, 2019?**

22          MR. LESNICK:  Same objection.

23          MR. RALLIS:  Objection.  Lack of

24   foundation.

25          THE WITNESS:  I plead the Fifth.

**DEPOSITION OF AARON MUN**
**January 20, 2020**

**78**

1   BY MR. WALKER:

2          Q.   Did you know whether or not the coins were

3   stored in a safe located at the Warrior Custom Golf

4   offices prior to March 5, 2019?

5              MR. RALLIS:  Same objection.

6              MR. LESNICK:  Same objection.

7              THE WITNESS:  I plead the Fifth.

8   BY MR. WALKER:

9          Q.   Did Mr. Flaherty or anyone with him on that

10  evening tell you anything about the coins?

11             MR. LESNICK:  Same objection.

12             MR. RALLIS:  Same objection.

13             THE WITNESS:  I plead the Fifth.

14  BY MR. WALKER:

15         Q.   With respect to the various items that

16  Mr. Flaherty removed from the Warrior Custom Golf

17  office, did they bring a dolly with them?

18             MR. LESNICK:  Same objection.

19             MR. RALLIS:  Same objection.

20             THE WITNESS:  I plead the Fifth.

21  BY MR. WALKER:

22         Q.   Did they bring anything at all to assist

23  them in removing the items from the office?

24             MR. RALLIS:  Same objection.

25             THE WITNESS:  I plead the Fifth.

**DEPOSITION OF AARON MUN**
**January 20, 2020**

1    BY MR. WALKER:

2        Q.    **Did they take the items down the elevator**

3    **or down a stairwell?**

4            MR. RALLIS:  Same objection.

5            THE WITNESS:  I plead the Fifth.

6    BY MR. WALKER:

7        Q.    **Were the items located on the first floor**

8    **or the ground floor of the office?**

9            MR. RALLIS:  Same objection.

10           THE WITNESS:  I plead the Fifth.

11   BY MR. WALKER:

12       Q.    **And I'm talking now about the seized items**

13   **that we referenced in Exhibit 2 and that were also**

14   **referenced in the subpoena.  Okay?**

15       A.    (Nods head.)

16           MR. LESNICK:  Same objection.  Also

17   compound.

18   BY MR. WALKER:

19       Q.    **With respect to the black computer tower,**

20   **the Acer ATC computer from Ms. Vanessen's desk, the**

21   **two backup flash drives and the five shoeboxes of**

22   **gold coins, did Mr. Flaherty and whoever he brought**

23   **with him that evening exit all those items from the**

24   **Warrior Custom Golf office?**

25           MR. RALLIS:  Same objections.

**DEPOSITION OF AARON MUN**
**January 20, 2020**

80

1              THE WITNESS:  I plead the Fifth.

2    BY MR. WALKER:

3         **Q.   Did you personally carry anything out of**

4    **the office that evening?**

5              MR. RALLIS:  Same objections.

6              THE WITNESS:  I plead the Fifth.

7    BY MR. WALKER:

8         **Q.   Did you provide Mr. Flaherty or anyone that**

9    **came with him on March 5, 2019, any other form of**

10   **assistance with respect to removal of the computers,**

11   **the flash drives and the gold coins from the Warrior**

12   **Custom Golf office?**

13             MR. RALLIS:  Same objections.

14             THE WITNESS:  I plead the Fifth.

15   BY MR. WALKER:

16        **Q.   Did you ever visit Mr. Flaherty's home**

17   **after March 5, 2019?**

18        A.   I plead the Fifth.

19             MR. WALKER:  I'll hand you what's been

20   marked as Exhibit 10.

21             (Exhibit 10 was subsequently marked for

22   identification by the Deposition Officer and is

23   appended hereto.)

24   BY MR. WALKER:

25        **Q.   Sir, during your tenure at Warrior Custom**

# **EXHIBIT 3**

**EXHIBIT "A"**

**EXCLUDED PARTIES**[1]

The following is a non-exclusive list of the Excluded Parties, as such term is defined in the Plan.

The Excluded Parties are subject to claims for, *inter alia*, Causes of Action, Avoidance Actions, Direct Causes of Action (to the extent not subject to an opt out right), and WGP Causes of Action (to the extent not subject to an opt out right), all as defined in the Plan.

With respect to Persons identified herein, Excluded Parties includes, *inter alia*: (i) any entity directly or indirectly owned or controlled by such Person, and (ii) any current or former spouse, partner, or any other relative of any such Person.

With respect to Entities identified herein, Excluded Parties includes all past and present, shareholders, members, partners, general partners, limited partners, officers, directors, employees, professionals, affiliates, subsidiaries, and successors of any such Entity.

1)      Brendan M. Flaherty
2)      Dillon Flaherty
3)      Devin Flaherty
4)      Destiny Flaherty
5)      Toni Flaherty
6)      Dwight Bickerstaff
7)      Aaron Mun
8)      Wayne Deloney
9)      Ryan Rodney
10)     Trevor Tam
11)     Katie Sanchez
12)     Henry Peter Wheelhan, Jr.
13)     Tom Porter
14)     R.E. Alexander
15)     Eric Taylor
16)     Howard Farber
17)     Russell Theisen
18)     Sean McDonald
19)     John Fitzmartin
20)     Douglas White
21)     Daniel Davis
22)     Sandra Davis
23)     Thomas Dean
24)     Bonnie Dean
25)     Brenda Severson
26)     Walter Curtis Hunt

---

[1] Capitalized terms used herein are as defined in the Plan to which this Exhibit A is attached.

27) Leon Engelking
28) Elvira Engelking
29) Rick Falaschetti
30) Stephen Thomas
31) Cecil Mellinger
32) Jessie Miller
33) [intentionally blank]
34) Dwight Beckstrand
35) Anthony Ivankovich
36) A and O Family Trust
37) A and O Family LLC
38) Zavatkay Holdings, LLC
39) WGP Related Persons
40) Dot Com Asset Management, Ltd.
41) BMF Properties, LLC
42) Sterling and Marx, Inc.
43) Wholesale Golf Supply & Services, Inc.
44) Sports Collectables International, Inc.
45) Warrior Table Soccer, LLC
46) Warrior Extreme Sports, LLC
47) Warrior Golf Properties, LLC
48) Warrior Golf, LLC, a California limited liability company
49) Warrior Development, Inc.
50) IRA Resources, Inc.
51) Equity Trust Company
52) ColeyDocter, Inc.
53) Runaway Bay Golf Club, LLC
54) Alpha Adventure Ranch at Nocona, LLC
55) City of Boonville, Indiana
56) Marcus & Millichap, Inc.
57) Stepp Law Corporation
58) Morgan Lewis & Bockius LLP
59) Wunderlich Securities, Inc.
60) Marcum LLP
61) Beckstrand Law Offices, P.C.
62) Warrior Custom Storage RV, LP
63) Riverbound Storage Management, LLC
64) Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, the marketing, sale, solicitation of Investments or the Convertible Notes
65) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to the marketing, sale, solicitation of Investments, or the Convertible Notes

2

66) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Failed 2017 Restructuring, including, the Senior Notes and the Pro Rata Notes

67) Any and all Persons and Entities that were Investors in Warrior Capital Management, LLC

68) Any and all Person and Entities that received a transfer of property of the Debtors, within the applicable statutes of limitations for avoidable transfers pursuant to, *inter alia*, Bankruptcy Code Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, and/or 724

69) Any and all Persons and Entities that participated, in any fashion, in the transactions identified in the Disclosure Statement or the Plan as being subject to potential investigation, recovery or litigation

70) Any and all Persons or Entities that, in any fashion, participated in, *inter alia*, what are defined in the Disclosure Statement as *the internal flips*, wherein, property was acquired by an entity and subsequently transferred or intended to be transferred to a Debtor

71) Any and all Persons or Entities that, in any fashion, received, causes to be transferred, or otherwise participated in, *inter alia*, property transfers by the Debtors as inducements or incentives to cause Investments

72) Any and all Persons or Entities that, in any fashion participated in, *inter alia*, provided advice, guidance, legal or financial consultation, with respect to, *inter alia*, the transactions, events and documents involved in the Debtors efforts to, and considerations of *going public*

Specifically, **not** Excluded Parties are:[2]

A) Professionals retained by the Debtors, in connection with the Chapter 11 Cases
B) Professionals retained by the Committee, in connection with the Chapter 11 Cases
C) The CRO
D) The CFO
E) Persons and Entities specifically identified in the Plan as being released or exculpated.

---

[2] The following list is not exhaustive.

# **Exhibit B**

[filed under seal for <u>in camera</u> review]