<u>**UNDER SEAL**</u>
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM            Date: June 2, 2020
Title: In the Matter of the Search Warrant Executed

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

    Not Present                                     Not Present

**PROCEEDINGS:**   **(IN CHAMBERS) ORDER DECLINING TO EXERCISE JURISDICTION OVER MOVANT'S MOTION FOR THE RETURN OF PROPERTY (Doc. 1)**

      Before the Court is Movant Brendan Flaherty's Motion for the Return of Seized Property Pursuant to Federal Rule of Criminal Procedure 41(g). (Mot., Doc. 1.) Respondent United States opposed (*See* Doc. 21, Notice of Manual Filing of Opp.)[1], and Flaherty replied (Reply, Doc. 25.) Having taken the matter under submission and reviewed all relevant papers, for the following reasons, Flaherty's Motion is DENIED.

**I. BACKGROUND**

      **A. Warrior Golf and the Seizure of Property**

      Flaherty is the co-founder and former chief executive officer of Warrior Custom Golf, a company in the business of manufacturing custom golf clubs. (Flaherty Motion to Quash in *In Re Westwind Manor Resort Association, Inc.*, No. 19-50025 (DRJ) (S.D.

---

[1] The Government requested to file portions its Opposition brief under seal and *in camera*. (*See* Notice of Manual Filing of Opp; Application to Seal, Doc. 7.) Because the Court resolves the instant Motion based only upon information not requested to be filed *in camera*, the Government's requests for *in camera* review of the Opposition are DENIED. However, the Court finds good cause for the Government's request to file its redacted Opposition brief under seal. Accordingly, the Application to Seal is GRANTED. The Government shall file the redacted, under seal version of its Opposition on the docket.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM                               Date: June 2, 2020
Title: In the Matter of the Search Warrant Executed

Tex.) ("Flaherty MTQ") ¶ 6, Tenley Decl. Ex. A.) He also founded additional corporate entities, related to Warrior Custom Golf and primarily in the business of owning and managing golf courses. (*Id.*; Opp. at 2.) On March 3, 2019, Flaherty resigned from his officer and director roles with each of the Warrior entities but remained an employee. (Rosenthal Decl. ¶ 5, Supplemental Tenley Decl. Ex. A, Doc. 29-1.) That same day, an independent board of directors, the members of which had no prior relationship with the corporations, was appointed to oversee the Warrior entities. (*Id.* ¶ 7.) In turn, the board approved Jeremy Rosenthal to act as the entities' Chief Restructuring Officer ("CRO"), authorizing him to "completely and solely control all of the [entities'] operations." (*Id.*) Between March 4, 2019, and May 30, 2019, each of the businesses filed for Chapter 11 bankruptcy. (*Id.* ¶ 9.) Those bankruptcy proceedings are ongoing in the Southern District of Texas, bearing the caption *In Re Westwind Manor Resort Association, Inc.*, No. 19-50025 (DRJ) (S.D. Tex.).

    Mr. Rosenthal attests that within the Warrior entities' Irvine headquarters was a four-foot tall safe containing gold and silver coins. (*Id.* ¶ 15.) At some time after 8 p.m. on March 5, 2019, Flaherty and other individuals, including his sons, met Aaron Mun, another Warrior employee, at the Irvine office. (*Id.* ¶ 17.) They, without authorization, removed various computer equipment from the office and the gold and silver coins from the safe. (*Id.* ¶¶ 18-20.) Surveillance footage from the office depicts Mr. Mun disconnecting the power supply for the camera system just before the system ceased recording at approximately 8:55 p.m. (*Id.* ¶ 22.) Mr. Mun told Mr. Rosenthal that he disconnected the power supply to ensure that the removal of the gold and silver would not be captured on video.[2] (*Id.* ¶ 22.) Thus, Mr. Rosenthal believes that the gold and silver is the property of the Warrior entities' bankruptcy estate. (*Id.* ¶ 23.)

    On June 4, 2019, in the course of a still-ongoing investigation, the IRS and FBI executed a search warrant at Flaherty's Laguna Hills, California home, seizing computer

---

[2] The Court does not accept as true any assertions of fact in the Rosenthal Declaration, especially those which qualify as hearsay. However, Mr. Rosenthal's statements are indicative of the arguments and issues before the bankruptcy court and demonstrate that ownership of the gold and silver coins is hotly contested.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM                               Date:  June 2, 2020
Title: In the Matter of the Search Warrant Executed

equipment and a "box containing 16 rolls of gold and silver coins."  (Mot. at 3; Uyeda Decl. ¶¶ 6-7, Doc. 4; Opp. at 1.)

### B.  Filing of the Instant Motion and Subsequent Developments

Flaherty filed the present Motion, seeking to regain possession of the seized computer equipment and precious metals, on November 18, 2019.  However, in early May 2020, the government returned all of the computer equipment to Flaherty and the bankruptcy estate.  (Supplemental Tenley Decl. ¶ 3, Doc. 29-1.)  The computer equipment was divided between those parties according to the terms of a stipulation entered in the *Westwind Manor Resort* bankruptcy matter.  (*Id*.)  Accordingly, Flaherty's Motion is moot except as to the gold and silver coins.

On May 13, 2020, the bankruptcy court overseeing the *Westwind Manor Resort* matter issued an order noting that it retains "exclusive jurisdiction over property of a bankruptcy estate regardless of its location."  (Bankruptcy Order at 1, Doc. 31 (citing 28 U.S.C. 1334(e)(1); *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447-48 (2004).)  The bankruptcy court found that the Warrior entities "established a colorable claim" that the gold and silver coins, which are the subject of this action, constitute property of the bankruptcy estate.  (*Id*.)  Accordingly, the bankruptcy court and Mr. Rosenthal have each requested that insofar as this Court grants Flaherty's Motion, it order any personal property remaining in the United States' possession, including the coins, turned over to Mr. Rosenthal, in his capacity as CRO, within the jurisdiction of the bankruptcy court.  (Bankruptcy Order at 1-2; Rosenthal Decl. ¶ 32.)  The bankruptcy court would then determine the property's ownership, in accord with the Federal Rules of Bankruptcy Procedure.  (Bankruptcy Order at 2.)

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . in the district where the property was seized."  Fed. R. Crim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM                                      Date:  June 2, 2020
Title: In the Matter of the Search Warrant Executed

P. 41(g).  If the Court "grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."  *Id*.  "Ordinarily, Rule 41[(g)] is used to seek the return of seized property after an indictment has been issued."  *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) (citing *Black Hills Institute v. Dept. of Justice*, 967 F.2d 1237, 1239 (8th Cir.1992).  "Nonetheless, district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."  *Id*. (citing United *States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir.1987)).  "These motions are treated as civil equitable proceedings and, therefore, a district court must exercise 'caution and restraint' before assuming jurisdiction."  *Id*. (citing *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir.1990)); *see also id*. at 326 (describing such an exercise of equitable jurisdiction as "extraordinary").

There are "four factors that a district court should consider in deciding whether to entertain a Rule 41[(g)] motion made prior to the initiation of criminal proceedings."  *Id*. at 325.  They are: "1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance."  *Id*.  An exercise of equitable jurisdiction is warranted where the "balance of equities tilts in favor of reaching the merits" of the Rule 41(g) claim.  *Id*. at 326.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM Date: June 2, 2020
Title: In the Matter of the Search Warrant Executed

## III. <u>DISCUSSION</u>

### A. The *Ramsden* Factors

An analysis of the *Ramsden* factors under the circumstances of this case demonstrates that it would be imprudent for this Court to exercise equitable jurisdiction over Flaherty's Rule 41(g) Motion.

As to the first *Ramsden* factor, Flaherty offers no argument that the government seizure in and of itself constituted a callous disregard for his constitutional rights. Indeed, the search and seizure was conducted pursuant to a duly authorized federal search warrant issued upon a showing of probable cause. (Opp. at 11; Tenley Decl. ¶ 3.) Instead, he argues principally that the because he is unable to sell the coins, the government's ongoing possession of the them constitutes a continuing disregard for his "Sixth Amendment right to fund his defense[, in this and related matters,] using counsel of his choice." (Mot. at 12.) But as the government notes, Sixth Amendment rights do not attach until adversarial criminal proceedings have been initiated. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). In the alternative, Flaherty argues that his Fifth Amendment due process and property rights have been violated. (Mot. at 12: Reply at 7.) However, the government's "retention of [] property generally is reasonable if it has a need for the property in an investigation or prosecution." *Ramsden*, 2 F.3d at 326. As the coins are relevant to an ongoing investigation[3] and their ownership is in dispute, the government's continued possession of the coins certainly does not evince a "callous disregard" to any of Flaherty's rights. Accordingly, this factor weighs against an exercise of jurisdiction.

Flaherty argues that the second *Ramsden* factor is met here because "he has established that he has an interest in and the need for" the coins. (Mot. at 4-7, 10-11.) In fact, he has not established by any clear measure that he holds a valid, legal interest in the coins. Rather, he documents a $400,000 transfer from an E*TRADE IRA in his name to another IRA held in the name of his personal LLC, Koktoday, LLC. (*See* Uyeda Decl.

[3] In its recent supplemental filings, the government indicates that the investigation still remains ongoing. (Supplemental Tenley Decl. ¶ 4 n.2.)

**CIVIL MINUTES – GENERAL** **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-02362-JLS-DFM                         Date:  June 2, 2020
Title: In the Matter of the Search Warrant Executed

Ex. C at 25-38, Doc. 4.)  In transactions occurring in September through December of 2018, the personal LLC then used those funds to purchase gold and silver from Augusta Precious Metals.  (*Id*.)  But the original source of these funds is indeterminate.  Flaherty explains that he is unable to provide any documentation relating to the 2005 opening and funding of the E*TRADE IRA in his own name because "E*TRADE's policy limits its retention of client records to the preceding 7 years."  (Mot. at 4; Uyeda Decl. ¶ 14, Doc. 4.)  Regardless of E*TRADE's document retention policies, Flaherty has made no attempt to explain, based on personal knowledge of his own finances, the source of the $400,000 at issue.  (*See* Opp. at 7.)  This ambiguity, coupled with the bankruptcy court's determination that the Warrior entities have made a colorable showing as to their ownership of the precious metals (*see* Bankruptcy Order at 1), shows that Flaherty has not sufficiently established an ownership interest.  Thus, as the issue of ownership of the gold and silver coins apparently will be resolved in the bankruptcy court, but is not yet resolved, this factor too weighs against an exercise of jurisdiction.  *See United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991) ("[A] Rule 41[(g)] Motion . . . may be denied if the [movant] is not entitled to lawful possession of the seized property."); *Ladele v. United States*, No. CR 06-00125 MMM, 2010 WL 476957, at *3 (C.D. Cal. Feb. 2, 2010) (explaining the same).

  With respect to the third *Ramsden* factor, Flaherty recycles his argument submitted on the first factor, asserting that he will suffer irreparable harm due to the government's ongoing callous violation of his Fifth and Sixth Amendment rights.  (Mot. at 11; Reply at 2, 9.)  However, as the Court explained above, Flaherty's Sixth Amendment rights are presently inapplicable and there has been no showing of a callous disregard of any of his rights.  Moreover, if it is ultimately found that Flaherty lacks an ownership interest in the coins, there would be no cognizable harm, let alone irreparable harm to Flaherty.  There can be no harm attendant to one's missed opportunity to liquidate assets that belong to another.  Accordingly, at least for the time being, this factor also counsels against an exercise of jurisdiction.

  The fourth *Ramsden* factor, concerning whether the movant has an adequate remedy at law for the redress of his grievance asks whether there exists another method, in the federal courts, by which Flaherty could regain possession of the seized property.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-02362-JLS-DFM | Date:  June 2, 2020 |
| Title: In the Matter of the Search Warrant Executed | |

*See Burum v. United States*, No. EDCV 11-01570 SJO (OPx), 2014 WL 12596719, at *6 (C.D. Cal. Apr. 2, 2014).  While not apparent at the time Flaherty filed his Motion, it is now clear that the court overseeing the *Westwind Manor Resort* bankruptcy matter will adjudicate the ownership issue in that proceeding.  Moreover, the bankruptcy court is in a better position than this Court to conduct that ownership inquiry – Flaherty and each of the Warrior entities are already litigating related issues before that court.  The bankruptcy court exercises *in rem* jurisdiction and is uniquely suited to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question." *Tenn. Student*, 541 U.S. at 448.  Hence, this final factor weighs against an exercise of jurisdiction by this Court.

  Accordingly, the *Ramsdens* factors instruct that an "extraordinary" exercise of this Court's equitable jurisdiction, in order to reach the merits of Flaherty's Motion, is not appropriate.

## IV. CONCLUSION

  For the foregoing reasons, the Court declines to exercise jurisdiction over, and therefore, DENIES Flaherty's Rule 41(g) Motion.  Accordingly, the Court does not order the transfer of the property at issue to Mr. Rosenthal, in his capacity as CRO, and the bankruptcy court may exercise its jurisdiction over the property as consistent with applicable law.